21192.   BAKER, next friend, *v.* AUGUSTA VENEER CO.

DECIDED DECEMBER 16, 1931.

*Nathan Jolles, Isaac S. Peebles Jr.,* for plaintiff.
*W. Inman Curry,* for defendant.

LUKE, J.   The bill of exceptions assigns error on an order sustaining a demurrer and dismissing the plaintiff's petition. The petition alleges that the plaintiff, a minor, was in the employ of the defendant; "that the nature of the work at which said minor was working consisted of carrying and stacking on a wagon-like contraption certain sheets of veneer as they were cut off by the clipper of the defendants premises; that it was usual and customary for the

defendant to have the floor, upon which clippings and shavings from the clipper would accumulate on the floor, raked up and the same carried off and out of the way so that employees would have a safe place to work; that on several occasions prior to the date hereinafter set out said minor had complained of the dangerous condition created by the accumulation of said clippings and shavings and on a particular occasion had the superintendent, Mr. Ashbrook, to crate in a belt and said superintendent assured said minor that he would not allow the clippings and shavings to accumulate while work was going on; that on July 29, 1929, about noontime said minor in carrying a stack of veneer from the clipper to the wagon, tripped and fell over some green veneer clippings and shavings," sustaining the injuries for which suit was brought, and avers that the defendant was negligent in allowing the clippings and shavings to accumulate on the floor, and failed to use that degree of care required of it by law in the employment of minors, as to its premises and manner in which the work was being performed. The demurrer contends that the petition does not set forth a cause of action and "that the petition shows that the plaintiff knew of the dangerous conditions and assumed the risk incident thereto."

It is true that a servant assumes the ordinary risks of his employment. It is also true that even though a master assures a servant that a dangerous instrumentality is safe, and commands the servant to use a dangerous appliance in a certain manner, such command on the part of the master will not justify or excuse a servant in rashly exposing himself to a known and obvious danger. This rule applies to cases where the likelihood or probability of injury is so obvious that a man of ordinary prudence would not incur the hazard, regardless of any assurance or promise of the master. But a different rule applies where the danger, though existing and known, is slight, and the exposure thereto by the servant is not a "rash exposure," and where the master, knowing of the danger, promises to remedy the defect and fails to keep his promise. For instance, if a servant attempts to put an air-jack under the driving-wheel axle of a locomotive, and by means of a lever and compressed air raise the same to a certain position, and before beginning the operation he knows that a certain appliance might drop off and injure him, he can not recover, because the danger was obvious, and there was a likelihood of injury. Likewise, if a servant attempts

to replace a belt while the machinery to which it is attached is in motion, there is an obvious danger and the risk is assumed by the servant. But where the plaintiff is working with clippings and shavings on the floor, and has so worked on previous occasions without injury, and the danger of injury by the said clippings and shavings is possible but not probable, and he continues to work under promise of the master to remedy the condition, he does not assume the risk.

The instant case is parallel in principle with that of *Evans* v. *Central of Georgia Railway Co.*, 36 *Ga. App.* 58 (135 S. E. 760). In that case the defect was the improper condition of the light in the servant's place of work. In the instant case it was the improper condition of the floor in the servant's place of work. In both cases the servant knew about the defect, had complained about the defect, and had continued to work in spite of the defect. In both cases the master had promised to remedy the defective condition and had failed to keep his promise. In both cases the servant was injured as a result of the defective condition with which he was familiar; but in neither case did the petition show that the danger was so patent that no person of ordinary prudence would continue to work under the surrounding conditions and circumstances. In the *Evans* case the court held that "the petition set forth a cause of action and should not have been dismissed on demurrer." The headnote in that case is as follows: "The petition as amended set forth a cause of action in favor of an employee for injuries alleged to be due to inadequate lighting of his place of work after he had complained of the dark and dangerous condition of the premises and an agent of the employer had promised to furnish proper light; and the court erred in sustaining the general demurrer and dismissing the petition. The jury should have been allowed to determine whether the alleged negligence in fact constituted negligence, and, if so, whether the plaintiff was authorized to continue his work, for the time shown by the petition, in reliance upon the alleged promise to remedy the defect, or whether his continuing the work in the face of what might be found to be a known and obvious risk amounted to such contributory negligence as would bar a recovery." And in the opinion (p. 60) Presiding Judge Jenkins, speaking for the court, said: "The plaintiff had done this work for six months without injury to himself, and says that the

danger was not so great and not so patent that no person of ordinary prudence would have worked with the instrumentalities and under the circumstances until the danger was removed and the defect remedied. As has often been held by the appellate courts, it is peculiarly within the province of the jury to determine questions of negligence, including a determination as to what constitutes the proximate cause of an injury. Where a servant with knowledge of a dangerous situation or instrumentality proceeds with the performance of his duties for a reasonable time, relying upon a promise by the master to rectify such condition, he will not be held to have assumed the risk of injury from such dangerous situation or instrumentality, unless it should appear that the danger was so patent that no person of ordinary prudence would in the meantime carry on the work under the then surrounding conditions and circumstances. Whether the servant was guilty of contributory negligence in continuing his work for a reasonable time, pending the rectification of such dangerous condition, and while relying upon such promise by the master, is ordinarily a question for the jury, to be determined from the evidence as to the obvious and serious character of the defect."

In *Bush* v. *Yellow Pine Co.*, 2 *Ga. App.* 300 (4) (58 S. E. 529), this court said: "It is actionable negligence for the master to order his servant to work with an unsafe instrumentality; an assurance of safety coupled with the order not only aggravates the master's negligence, but also relieves the servant from the assumption of the risk; the assurance of safety likewise makes the question of the servant's contributory negligence one for solution by the jury, unless the danger be so obvious that to undertake to encounter it amounts to plain rashness. The master's command and assurance of safety to the servant prevents the former escaping liability on the theory that the latter has assumed the risk; it is for the jury to say whether the servant's conduct in continuing to work in the light of his knowledge of the danger, even after the assurance of safety is given due weight, was or was not negligence; for a person who has failed to exercise ordinary care to protect himself can not recover. This is a maxim of the law applicable to all suits predicated upon negligence, and is wholly independent of the question as to who has assumed the risk as a matter of contract. This is a jury question which the court did not have the power to determine

on demurrer." The 2d headnote in *Cherokee Brick Co.*, v. *Hampton*, 16 *Ga. App.* 54 (84 S. E. 328), is as follows: "A court can never judicially declare that a servant has failed to exercise ordinary care in performing an act in obedience to the orders of his master unless, after a consideration of the circumstances in the case, including the orders given the servant, the demands of his duty, the apparent risk to be met and the purposes his act was intended to subserve, it is obvious that the risk was so great that it would not have been hazarded by any man of common prudence." See also *Hodges* v. *Murkison*, 24 *Ga. App.* 739 (102 S. E. 134); *Savannah Warehouse & Compress Co.* v. *Hayes*, 25 *Ga. App.* 356 (103 S. E. 270); *Central of Georgia Ry. Co.* v. *Lindsey*, 28 *Ga. App.* 198 (110 S. E. 636).

The implied agreement on the part of a servant to assume the risk ordinarily incident to his employment may, under certain circumstances, be abrogated by a promise of the master to rectify dangerous conditions; and the allegations of the petition in this case were such that a jury should have been permitted to determine whether the defendant company was negligent in allowing the clippings and shavings to accumulate on the floor, in failing to furnish the plaintiff a safe place to work, and in failing to use that degree of care required of it by law in the employment of minors as to its premises and the manner in which the work was being performed; and whether the alleged danger to which the servant was exposed was so patent that no person of ordinary prudence would subject himself to it. The court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*